UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| POGA MGMT PARTNERS LLC, | Case No:  C 12-06087 SBA |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| vs. | |
| MEDFILER d/b/a RPG CONSULTANTS, ALVIN RAPP, EVAN RAPP and DOES 1-20, | Docket 10 |
| Defendants. | |

Plaintiff POGA MGMT PARTNERS LLC ("POGA") brings the instant action against Defendants Medfiler LLC d/b/a RPG Consultants ("RPG"), Alvin Rapp ("Alvin"), and Evan Rapp ("Evan") (collectively, "Defendants") alleging claims for breach of fiduciary duty and conspiracy to commit breach of fiduciary duty.  The parties are presently before the Court on Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Dkt. 10.  POGA opposes the motion.  Dkt. 19.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' motion, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.      **BACKGROUND**

       A.      **Factual Summary**

       POGA is a limited liability company organized and existing under the laws of California with its principal place of business in California.  Compl. ¶ 2, Dkt. 1.  Michael

Gamboa ("Gamboa") is POGA's "Managing Member" and is a resident of California.  Id. ¶ 12.

RPG is a limited liability company organized and existing under the laws of New York.  Compl. ¶ 3.  Alvin and Evan (collectively, the "individual defendants") are "owner members" of RPG.  Id. ¶ 4-5.  The individual defendants currently live in New York and have never lived in California.  Alvin Decl. ¶ 2, Dkt. 10-1; Evan Decl. ¶ 2, Dkt. 10-6.

In or around March 2004, "POGA and its managing partner, . . . Gamboa, entered into a partnership with Defendants to create a revolutionary new company called 401k Retirement Solutions LLC" ("401k Retirement Solutions").  Compl. ¶ 12.  The partnership created an ongoing, continuing obligation between POGA and Defendants.  Id.  The goal of 401k Retirement Solutions was to create an "open architecture platform service that offered bundled services to clients [to] service their 401k accounts."  Id. ¶ 13.  "Using Exchange Traded Funds ('ETFS'), 401k [Retirement Solutions] offered investment education, participant and plan record keeping, internet access for participants, as well as sponsor discrimination testing, annual government reporting on 5500 forms, coupled with a hands-on tailored plan design."  Id.

During the course and scope of forming the partnership, POGA was located in California and Defendants were located in New York.  Compl. ¶ 15.  "They communicated heavily through telephone and electronic mail.  Over the course of their entire business relationship, [POGA's] and Defendants' communications were mostly via email and telephone."  Id.

Throughout the partnership's operation, 401k Retirement Solutions serviced thousands of clients across the country.  Compl. ¶ 17.  Defendants' role in the partnership was to provide record-keeping services for the company's clients, including clients in California.  Id.  401k Retirement Solutions charged clients a quarterly fee between 1.75% and 2.75%, with a minimum of 3.5% for plans with assets of less than $125,000.  Id. ¶ 16.  It also charged a fee per participant in each plan and a quarterly fee for record-keeping services.  Id. ¶ 16.  By 2007, gross revenue for 401k Retirement Solutions was about

$166,000 quarterly with $60,000,000 in gross plan assets.  Id. ¶ 18.  Annual projected revenue for 401k Retirement Solutions for the end of 2010 was between $1,000,000 and $1,500,000, with assets in excess of $100,000,000.  Id.

At some point during their business relationship with POGA, Defendants allegedly became "greedy" and "frustrated" with their 25% equity in 401k Retirement Solutions and slowly began "siphon[ing] off" clients to a competing platform that Defendants created using 401k Retirement Solutions funds, employees, and software.  Compl. ¶¶ 19-20. According to POGA, the creation of this competing platform was Defendants' "first step in destroying 401k [Retirement Solutions] and destroying [POGA]."  Id. ¶ 20.

POGA alleges that in the fourth quarter of 2009 Defendants sent a letter to 401k Retirement Solutions' clients advising them that they were withdrawing their record-keeping services "in a matter of days."  Compl. ¶ 22.  In that letter, Defendants allegedly offered the clients an opportunity to move their 401(k) plans to Defendants' new platform. Id.  According to POGA, the majority of 401k Retirement Solutions' clients "moved" to Defendants' new company because the clients faced "imminent termination" of Defendants' record-keeping services.  Id.

POGA asserts that Defendants' have "destroyed" 401k Retirement Solutions' ability to conduct business by seizing control of its business and assets, including its clients. Compl.  ¶ 23.  POGA further asserts that Defendants have failed and refused to account for their actions and continue to insist they are partners in 40lk Retirement Solutions, despite the fact that they have engaged in self-dealing, formed a competing business, and taken the assets of 40lk Retirement Solutions.  Id. ¶ 24.

As of the first quarter of 2010, 401k Retirement Solutions allegedly had no assets or revenue due to Defendants' conduct.  Compl. ¶ 25.  POGA alleges that it did not, and could not have discovered, the actions of Defendants until the fourth quarter of 2009 because Defendants mislead and concealed their actions from it.  Id. ¶ 25.  According to POGA, former 401k Retirement Solutions clients generate hundreds of thousands of dollars in profit for Defendants.  Id. ¶ 34.

**B.    Procedural History**

On September 28, 2012, POGA commenced the instant action against Defendants in the Superior Court of California, County of San Francisco, alleging claims for breach of fiduciary duty and conspiracy to commit a breach of fiduciary duty.  See Compl.  POGA's first claim for relief alleges that "Defendants" breached their fiduciary duty of undivided loyalty to POGA by "knowingly act[ing] against [POGA's] best interests in connection with 401k [Retirement Solutions] by stealing 401k [Retirement Solutions'] customers for themselves."  Compl. ¶¶ 31-32.  POGA's second claim for relief alleges that "Defendants" engaged in a conspiracy to breach their fiduciary duty to POGA by "creating a competing platform using 401k [Retirement Solutions'] funds, employees and software, and [by] stealing 401k [Retirement Solutions'] clients for themselves.  Id. ¶¶ 37-39.  By this action, POGA seeks $10,000,000 in compensatory damages plus interest, punitive damages, attorneys' fees, and costs of suit.  See id.

On November 30, 2012, Defendants removed the action to this Court based on diversity of citizenship.  Notice of Removal, Dkt. 1.  The case was reassigned to the undersigned on January 22, 2013.  Dkt. 12.  The parties are presently before the Court on Defendants' motion to dismiss for lack of personal jurisdiction.  Dkt. 10.

## II.    LEGAL STANDARD

District courts have the authority to dismiss an action for lack of personal jurisdiction.  Fed.R.Civ.P. 12(b)(2).  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues."  See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).  "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  Id. (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).  To make that showing, a plaintiff

1   need only demonstrate facts that, if true, would support jurisdiction over the defendant.

2   Mattel, Inc. v. Greiner and Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003).

3        In deciding a motion to dismiss for lack of personal jurisdiction, the Court accepts as

4   true any uncontroverted allegations in the complaint and resolves any conflicts between the

5   facts contained in the parties' evidence in the plaintiff's favor.  Glencore Grain Rotterdam

6   B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002).  However, for

7   personal jurisdiction purposes, a court "may not assume the truth of allegations in a

8   pleading which are contradicted by affidavit."  Alexander v. Circus Circus Enters., Inc., 972

9   F.2d 261, 262 (9th Cir. 1992) (internal quotation marks omitted).  In addition, the court

10  need not accept as true mere conclusory allegations in the complaint.  See NuCal Foods,

11  Inc. v. Quality Egg LLC, 887 F.Supp.2d 977, 988 (E.D. Cal. 2012) (citing Wenz v.

12  Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995); China Technology Global Corp. v.

13  Fuller, Tubb, Pomeroy & Stokes, 2005 WL 1513153, at *3 (N.D. Cal. 2005)).

14       Personal jurisdiction over a nonresident defendant is analyzed under a two-part test.

15  Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994).  First, the exercise of

16  jurisdiction must satisfy the requirements of the applicable state long-arm statute.  Id.

17  Second, the exercise of jurisdiction must comport with federal due process.  Id. at 1404-

18  1405.  Because California's long-arm statute, Cal. Civ. Proc. Code § 410.10, extends

19  jurisdiction to the limit of federal due process, the Court need only analyze the second part

20  of the test.  See Glencore, 284 F.3d at 1123.

21       Due process requires that a defendant have sufficient "minimum contacts" with the

22  forum state.  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Burger King Corp. v.

23  Rudzewicz, 471 U.S. 462, 474 (1985).  The minimum contacts must be such that a

24  defendant "should reasonably anticipate being haled into court" in the forum state.  World–

25  Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Under a minimum

26  contacts analysis, jurisdiction may either be "general" or "specific."  Doe, 248 F.3d at 923.

27  General jurisdiction depends on the defendant's "substantial, continuous and systematic"

28  contacts with the forum, "even if the suit concerns matter not arising out of his contacts

with the forum." <u>Glencore</u>, 284 F.3d at 1123.  Specific jurisdiction exists "where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." <u>Id.</u>  Here, POGA claims that the Court has both general and specific personal jurisdiction over RPG and the individual defendants.

## III.   **DISCUSSION**

Defendants contend that the Court lacks personal jurisdiction over RPG because RPG's contacts with California are insufficient to confer general jurisdiction over RPG or to establish any of the three elements required for specific jurisdiction.  Def.'s Mtn. at 2. Defendants further argue that the Court has no personal jurisdiction over the individual defendants because neither of them has sufficient contacts with California to support a finding of general or specific jurisdiction.  <u>Id.</u>

### A.   **General Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S.Ct. 2846, 2851 (2011).  General jurisdiction exists when a defendant maintains "continuous and systematic general business contacts" with the forum state, <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984), that "approximates physical presence" within the state's borders. <u>Bancroft & Masters v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000); <u>see</u> <u>Glencore</u>, 284 F.3d at 1123 (general jurisdiction depends on the defendant's substantial, continuous and systematic contacts with the forum, even if the suit concerns matters not arising out of his contacts with the forum).  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  <u>Bancroft & Masters</u>, 223 F.3d at 1086.

"The standard [for general jurisdiction] is met only by continuous corporate operations within a state that are thought [to be] so substantial and of such a nature as to

justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities."  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011) (quotation marks and alterations omitted).  "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, [courts] consider their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets."  Id. (quotation marks omitted).  "The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.' "  Id.

Here, POGA contends that "Defendants" are subject to general jurisdiction because they consistently "referred" to having Gamboa as their "California Partner, utilizing this partnership reference to make sales and engage in business in California, serve the California market, and essentially show a physical presence in California.  Pl.'s Opp. at 9.  In addition, POGA contends that "Defendants" are subject to general jurisdiction because they "have made numerous alliances with California companies to do business in California, with California residents."  Id.  In this regard, POGA asserts that Defendants' website lists three California companies that Defendants have made "alliances" with to provide record keeping services for "perhaps" thousands of California 401(k) plans.  Id. at 9-10.  POGA further asserts that "Defendants" serviced and administered hundreds of 401(k) plans based in California during their partnership with POGA.  Id. at 10.  According to POGA, "[i]n partnering with [POGA], and thereafter engaging in business with multiple California companies, Defendants have served, and continue to serve California's 401(k) markets."  Id.

As an initial matter, the Court notes that POGA's argument in support of general jurisdiction fails to distinguish between the entity Defendant, RPG, and the individual defendants.  Personal jurisdiction over each defendant must be assessed individually. Calder v. Jones, 465 U.S. 783, 790 (1984); Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir.

1990).  That aside, the Court finds that POGA has failed to sustain its burden to establish a prima facie case of general jurisdiction with respect to any of the Defendants.

The individual defendants both currently live in New York.  Alvin Decl. ¶ 2; Evan Decl. ¶ 2.  RPG is a New York corporation and does not maintain a physical presence in California.  Alvin Decl. ¶ 6.  It has offices in New York City and Valley Stream, New York.  Id. ¶ 6.  RPG provides consulting, administration and recordkeeping services for company benefit plans to approximately 500 companies, only a "small fraction" of which are located in California.  Id. ¶ 7.  All of RPG's services are conducted in New York.  Id. RPG has no offices, staff, telephone listing or mailing address in California.  Id. ¶ 6. Further, RPG does not have a bank account, assets, or a registered agent for service of process in California.  Id. ¶ 6.  RPG also has no corporate filings with the Secretary of State of California and pays no California state taxes.  Id.  POGA, for its part, has not shown that RPG conducts its business operations in California, advertises in the state, or has a license to do business in the state.

Based on the record presented, the Court finds that RPG's contacts with California do not qualify as substantial, continuous, and systematic contacts that approximate physical presence within California's borders to support a finding of general jurisdiction.  To the extent that RPG has a business relationship with POGA and other California companies, POGA has not shown that RPG's business relationships constitute "doing business in California" as opposed to "doing business with California."  See Schwarzenegger, 374 F.3d at 801 (rejecting a nonresident defendant's partnership with a forum-based advertising agency as a basis for general jurisdiction); Bancroft & Masters, 223 F.3d at 1086 (rejecting a nonresident defendant's licensing agreements with forum-based television networks and vendors as a basis for general jurisdiction).

The Court also finds that POGA has failed to show that either of the individual defendants has sufficient contacts with California to satisfy the exacting standard of general jurisdiction.  POGA has not alleged facts in the complaint or submitted any evidence establishing that either of the individual defendants has substantial, continuous and

systematic contacts with the forum that "approximates physical presence."  Indeed, the complaint does not identify any specific contacts that either of the individuals had with California.

### B.   Specific Jurisdiction Over RPG

The existence of specific jurisdiction is directly dependent on whether the claims at issue arise from the defendant's forum-related contacts.  Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).  The Ninth Circuit applies a three-prong test for analyzing whether specific jurisdiction is present:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Schwarzenegger, 374 F.3d at 802 (citing Burger King, 471 U.S. at 476-478).  Of the three prongs, the first "is the most critical."  Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997).

#### 1.   "Purposeful" Requirement

The "purposeful direction" test applies to tort claims.  Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010); see Coupons, Inc. v. Efros, 2006 WL 37036, at *3 (N.D. Cal. 2006) (applying purposeful direction test to breach of fiduciary duty claim).  This test, which derives from Calder, 465 U.S. 783, "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).  To meet the

express aiming requirement, plaintiff must proffer "evidence of the defendant's actions outside the forum state that are directed at the forum[.]"  Schwarzenegger, 374 F.3d at 803.[1]

Here, POGA alleges tort claims for breach of fiduciary duty and conspiracy to commit breach of fiduciary duty.  Compl. ¶¶ 28-42.  These claims arise out of a partnership entered into between POGA and the Defendants to create a company called 401k Retirement Solutions, which provided "an open platform service that offered bundled services to clients [to] service their 401k accounts."  Id. ¶ 13.  POGA alleges that Defendants' role in the partnership was to provide record-keeping services for clients in exchange for 25% equity in the company.  Id. ¶¶ 17, 19.  POGA further alleges that, at some point during the partnership, Defendants became "greedy" and "frustrated" with their equity in the company and began to "siphon off" 401k Retirement Solutions' clients.  Id. ¶ 19.  According to POGA, Defendants created a competing platform using 401k Retirement Solutions' funds, employees and software, withdrew their record-keeping services from 401k Retirement Solutions, and sent a letter to clients of 401k Retirement Solutions informing them that Defendants were withdrawing their services and offering them an opportunity to move their 401(k) plans to RPG's platform.  See id. ¶¶ 20-22.  POGA contends that Defendants breached their fiduciary duty of undivided loyalty to POGA by knowingly acting against POGA's "best interests in connection with 401k [Retirement Solutions] by stealing 401k [Retirement Solutions'] customers for themselves."  Id. ¶¶ 31-32.

The Court finds that POGA has sufficiently demonstrated that RPG has purposefully directed its tortious actions at California.  First, RPG acted intentionally when it allegedly: (A) created a platform that competed with 401k Retirement Solutions using 401k Retirement Solutions' funds, employees and software; (B) withdrew its record-keeping

---

[1] The Ninth Circuit uses "the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, . . . but availment and direction are, in fact, two distinct concepts."  Schwarzenegger, 374 F.3d at 802.  "A purposeful availment analysis is most often used in suits sounding in contract [while] [a] purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."  Id.  In this case, POGA relies on the purposeful direction test, not the purposeful availment test.

services from 401k Retirement Solutions; and (C) solicited and "stole" 401k Retirement Solutions' clients.  See Brayton Purcell, 606 F.3d at 1128 (construing "intent" as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act).  Second, RPG's acts were expressly aimed at California because, at the time of the acts giving rise to the instant action, RPG knew that POGA was a California limited liability company with an office in San Francisco, California.[2]  Bancroft, 223 F.3d at 1087 (the requirement of express aiming is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state).  Third, if RPG withdrew its record-keeping services and solicited and "stole" clients from 401k Solutions as alleged by POGA, the effects of this conduct were felt, as RPG knew they would be, in California.  Dole Food, 303 F.3d at 1113-1114 (courts "rel[y] in significant part on the principal place of business in determining the location of a corporation's place of economic injury").

Although Defendants recognize that the claims alleged in the complaint are torts, they nonetheless argue that the purposeful availment test applies because the duty giving rise to POGA's breach of fiduciary duty claim is based on the contractual relationship between the parties.  A showing that a defendant "purposefully availed" itself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum and is generally used in contract cases.  Schwarzenegger, 374 F.3d at 802.  The requirement of purposeful availment ensures that the defendant should reasonably anticipate being haled into the forum state court based on its contacts.  World-Wide Volkswagen, 444 U.S. at 297.  The purposeful availment test is met where "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents."  Ballard, 65 F.3d at 1498.

The Court finds that the purposeful availment prong of the specific jurisdiction test is satisfied.  The complaint alleges that POGA and RPG entered into a partnership in or

---

[2] RPG knew on or before entering into the "Operating Agreement of 401k Retirement Solutions, LLC" in March 2004 that POGA was a California limited liability company.  See Alvin Decl. ¶¶ 3-4, Exh. A.

around March 2004 for the purpose of forming a "revolutionary" new company called 401k Retirement Solutions, which created an ongoing, continuing obligation between RPG and POGA, a California resident. See Compl. ¶¶ 2, 12. RPG's role in the partnership was to provide record-keeping services for 401k Retirement Solutions' clients and to distribute fees generated by the company to POGA on a quarterly basis. Gamboa Decl. ¶¶ 9, 17. RPG provided record-keeping services until approximately the fourth quarter of 2009. Id. ¶ 10; Compl. ¶ 21. By contracting to provide ongoing record-keeping services with POGA, RPG deliberately created continuing obligations between itself and a resident of this forum, and therefore manifestly availed itself of the privilege of conducting business here. See T.M. Hylwa, M.D., Inc. v. Palka, 823 F.2d 310, 314 (9th Cir. 1987) (defendant purposefully availed himself of the privilege of conducting business in California by contracting to provide ongoing accounting services to a resident of the forum)[3]; see also Burger King, 471 U.S. at 475-476 (where the defendant has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there) (citations omitted).[4]

## 2.    Arising out of Forum-Related Activities

Under the second prong of the test for specific personal jurisdiction, a plaintiff's claim must arise "out of the defendant's forum-related activities." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998). Plaintiff must show that "but for" the

---

[3] In Hylwa, the Ninth Circuit held that the purposeful availment prong was satisfied where an accountant had contracted to perform accounting services in Kansas for a single California client. Hylwa, 823 F.2d at 314. The accountant provided services from his Kansas office for several years and also traveled to California approximately once a year to work in the client's office. Id. at 312. The Ninth Circuit found that by contracting to provide services to a California client, the accountant deliberately created continuing obligations between himself and a resident of the forum and manifestly availed himself of the privilege of conducting business there. Id. at 314.

[4] In addition to conducting an ongoing business relationship with a California company for approximately five years, the Court notes that Alvin, the founder of RPG, traveled to California once in 2003 and once in 2005 to meet with Gamboa regarding business matters concerning 401k Retirement Solutions. Alvin Decl. ¶¶ 2, 4. Alvin also traveled to California in late 2011 or early 2012 as a representative of RPG to meet with a money management firm and to give a lecture regarding retirement planning to a group of CPAs. Id. ¶ 4.

1    defendant's forum-related conduct, the injury would not have occurred.  Myers v. Bennett

2    Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).

3          The Court finds that POGA has satisfied the second prong of the test for specific

4    jurisdiction.  "But for" RPG's agreement to enter into a partnership with California-based

5    POGA to create 401k Retirement Solutions, RPG would not have been able to withdraw its

6    record-keeping services from 401k Retirement Solutions, and would not have had access to

7    401k Retirement Solutions' assets, employees and software to create a competing platform

8    to offer to 401k Retirement Solutions' clients.  Thus, POGA's claims arise out of RPG's

9    forum-related activities.

10                 **3.        Reasonableness**

11         Because POGA has established the first two prongs of the test for specific

12   jurisdiction, RPG has the burden to "present a compelling case that the presence of some

13   other considerations would render jurisdiction unreasonable."  Core-Vent Corp. v. Nobel

14   Indus. AB, 11 F.3d 1482, 1487 (9th Cir. 1993).  Specifically, RPG must show that the

15   exercise of jurisdiction in the forum would "make litigation so gravely difficult and

16   inconvenient that a party unfairly is at a severe disadvantage in comparison to his

17   opponent."  Burger King, 471 U.S. at 478.  The reasonableness determination requires

18   consideration of a number of factors: "(1) the extent of the defendants' purposeful injection

19   into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3)

20   the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's

21   interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

22   controversy; (6) the importance of the forum to the plaintiff's interest in convenient and

23   effective relief; and (7) the existence of an alternative forum."  Dole, 303 F.3d at 1114.  No

24   single factor is dispositive.  Core-Vent, 11 F.3d at 1488.  Where a defendant has created a

25   "continuing obligation" between itself and a resident of the forum, "it is presumptively not

26   unreasonable to require him to submit to the burdens of litigation in that forum[.]"  Burger

27   King, 471 U.S. at 476.

28

Here, Defendants argue that it would be neither reasonable nor fair for this Court to exercise jurisdiction over RPG for the following reasons: (1) RPG's purposeful injection into California is nonexistent or, at best, minimal; (2) the burden on RPG in defending this action in California would be substantial as RPG would have to maintain local California counsel and travel to California for court appearances; (3) California does not have an interest in adjudicating this dispute because 401k Retirement Solutions was formed as a Nevada limited liability company and then as a New York company, and the operating agreement expressly requires the application of the law of the state of formation; and (4) New York is a more appropriate forum for adjudicating this dispute because RPG is located in New York, and the alleged misconduct occurred in New York.  Def.'s Mtn. at 11.

Considering the above-referenced factors, the Court finds that RPG has failed to sustain its burden to present a "compelling case" that it would be unreasonable to exercise personal jurisdiction over RPG.  RPG has failed to rebut the presumption of reasonableness in exercising jurisdiction.  First, as discussed above, RPG purposefully injected itself into the forum by conducting an ongoing business relationship with a California company for approximately five years.  See Hylwa, 823 F.2d at 315 (finding that an accountant "purposely interjected" himself into California affairs by choosing to maintain a four-year relationship with a California corporation).  As such, the first factor weighs in favor of the exercise of jurisdiction.

Second, while the Court recognizes that it may be more burdensome for RPG to litigate this case in California rather than in New York, where RPG was formed and where RPG's offices are located, this factor is not dispositive and does not rebut the presumption of reasonableness.  See CE Distribution, LLC v. News Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004) ("[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."); Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1481 (9th Cir. 1986) ("[I]nconvenience to a party who has minimum contacts with the forum often more appropriately is handled through changes in venue, and not by refusing to exercise

jurisdiction.  Unless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.") (citations omitted).  Indeed, the burden on RPG from having to litigate this case in California is significantly lessened by the fact that RPG is represented by a national law firm that has two offices located in the Northern District of California, including an office in San Francisco, California.  See http://www.kasowitz.com/offices/.  Moreover, the burden on RPG from having to litigate outside of its preferred forum is comparable to the burden on POGA from having to litigate outside of this district, its home forum.

Third, even assuming New York is an appropriate alternative venue for this case as Defendants argue, California has a strong interest in this suit as it involves harm done to a California resident.  See CE Distribution, 380 F.3d at 1112 ("The forum state has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another.").  Moreover, POGA chose to litigate in this district, its home forum, which is the most convenient for POGA.  Id. ("Litigating in one's home forum is obviously most convenient . . . . [H]owever, this factor is 'not of paramount importance.' ").

Finally, Defendants do not argue that litigating this matter in California would create a conflict with the sovereignty of the State of New York, or that New York provides any marked efficiency over litigating this case in California.  As such, Defendants have not shown that these factors weigh against the exercise of personal jurisdiction.

In sum, factors one, four and six weigh in favor of the exercise of personal jurisdiction, while factors two and seven weigh slightly against the exercise of personal jurisdiction.  Defendants have failed to show that either factor three or factor five weighs against the exercise of personal jurisdiction.  Accordingly, the Court concludes that the exercise of personal jurisdiction over RPG is reasonable.

## C.   Specific Jurisdiction Over the Individual Defendants

POGA argues that the individual defendants are subject to personal jurisdiction because they are the "primary participants" in the wrongdoing directed at POGA, "[a]s

alleged in the complaint, and set forth in the Gamboa Declaration and Exhibits."  Pl.'s Opp. at 10.

The fiduciary field doctrine provides that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over that person.  Rather, there must be a reason for the court to disregard the corporate form."  Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989) (citations omitted).  In other words, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well."  Colt Studio, Inc. v. Badpuppy Enter., 75 F.Supp.2d 1104, 1111 (C.D. Cal. 1999).  While employees are not necessarily subject to liability in a given jurisdiction due to the contacts of their employers, "their status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually."  Calder, 465 U.S. at 790.

"Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those used in liability contexts."  Davis, 885 F.2d at 520.  The corporate form may be ignored where the corporation is the alter ego of the individual defendant.  Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir. 1984).  "To apply the alter ego doctrine, the court must determine (1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice."  Id.

The corporate form may also be ignored where a corporate officer or director authorizes, directs, or participates in tortious conduct.  See Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985); Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort").

"[C]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity."  See Davis, 885 F.2d at 524 n. 10; see Calder, 465 U.S. at 790 (an employee, officer or director may be subject to personal jurisdiction where the individual is a "primary participant" in the alleged wrongdoing).  The assertion of personal jurisdiction based on the primary participant theory is appropriate where the individual had "control of, and direct participation in the alleged activities."  Wolf Designs, Inc. v. DHR Co., 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004) (citing Transgo, 768 F.2d at 1021).  Absent such participation and control, a defendant's contacts with the forum state will not suffice to establish personal jurisdiction where such contacts arise only by virtue of the individual's status as an employee of a company.  See Colt Studio, 75 F.Supp.2d at 1112.

Here, POGA's first claim for relief alleges that "Defendants" breached their fiduciary duty of undivided loyalty to POGA by "knowingly act[ing] against [POGA's] best interests in connection with 401k [Retirement Solutions] by stealing 401k [Retirement Solutions'] customers for themselves."  Compl. ¶¶ 31-32.  POGA's second claim for relief alleges that "Defendants" engaged in a conspiracy to breach their fiduciary duty to POGA by "creating a competing platform using 401k [Retirement Solutions'] funds, employees and software, and stealing 401k [Retirement Solutions'] clients for themselves.  Id. ¶¶ 37-39.

The complaint, however, does not allege any facts demonstrating that the individual defendants were the "primary participants" in the alleged wrongdoing or that either of them was the "guiding spirit" behind the wrongful conduct or the "central figure" in the challenged corporate activity.  In fact, there are no facts in the complaint describing the conduct or acts that the individual defendants engaged in, let alone facts sufficient to support a finding that the individual defendants should be subject to suit in their personal capacity.  Instead, the allegations in the complaint refer to the conduct and acts of the "Defendants."  Accordingly, because there are no facts in the complaint plausibly

1    suggesting that either of the individual defendants was the primary participant in the

2    alleged wrongdoing (i.e., they had control of, and directly participated in the alleged

3    wrongful activities), the allegations in the complaint are insufficient to establish personal

4    jurisdiction over the individual defendants.[5]

5           To the extent POGA argues that the individual defendants are subject to personal

6    jurisdiction as the primary participants in the alleged wrongdoing because they "were

7    responsible for the quarterly partner distributions to [POGA], and were also the ones who

8    ceased those payments in or around the fourth quarter of 2009," Pl.'s Opp. at 10, the Court

9    disagrees.  In support of this argument, POGA cites paragraph 10 of Gamboa's declaration,

10   which states, in relevant part, that "*Defendants* . . . unilaterally ceased their obligations to

11   make quarterly distributions during the fourth quarter of 2009."  Gamboa Decl. ¶ 10

12   (emphasis added).  There are no facts in paragraph 10 of Gamboa's declaration that

13   establish that either of the individual defendants had control of, and directly participated in,

14   the withdrawal of Defendants' record-keeping services from 401k Retirement Solutions or

15   the other wrongful activities alleged in the complaint; namely, the creation of a competing

16   platform using 401k Retirement Solutions' funds, employees and software, and the

17   "stealing" of 401k Retirement Solutions' clients.

18   ///

19   ///

20   ///

21

22         [5] The complaint alleges that there is a unity of interest and ownership between RPG
     and the individual defendants such that the separate personalities of the corporation and the
23   shareholder do not in reality exist, and that an inequitable result will occur if the acts
     alleged in the complaint are treated solely as the acts of RPG.  Compl. ¶ 6.  However,
24   POGA does not argue in its opposition that the corporate form should be ignored because
     RPG is the alter ego of the individual defendants.  Moreover, even assuming that POGA is
25   relying on an alter ego theory to establish personal jurisdiction over the individual
     defendants, the conclusory allegations in the complaint are insufficient to establish alter-
26   ego status.  See NuCal Foods, 887 F.Supp.2d at 993 ("Mere '[c]onclusory allegations of
     alter-ego status are not sufficient.' ").  Indeed, even if the complaint's allegations were
27   sufficient to establish that the separate personalities of RPG and the individual defendants
     do not in reality exist, POGA has not alleged or provided evidence demonstrating that the
28   failure to disregard the corporate form would result in a fraud or injustice.

**D.      Request for Jurisdictional Discovery or Leave to Amend**

POGA requests leave to conduct jurisdictional discovery or leave to amend the complaint if the Court determines that it has failed to make a prima facie showing that Defendants are subject to personal jurisdiction.  Pl.'s Opp. at 11.

**1.      Jurisdictional Discovery**

POGA requests leave to conduct discovery on "Defendants" alliances with California companies for the purpose of establishing general jurisdiction over "Defendants."  Pl.'s Opp. at 11.  POGA also requests leave to conduct jurisdictional discovery to "show the extent of Defendants' contacts with [POGA] for the purposes of determining specific jurisdiction."  Id.

A district court's decision to permit or deny jurisdictional discovery is reviewed for abuse of discretion.  Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008).  "The district court's refusal to provide such discovery, 'will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.  Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.' "  Id.  On the other hand, " 'where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery. . . .' "  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006).

Here, the Court has determined that RPG is subject to personal jurisdiction in this forum.  As such, jurisdictional discovery with respect to RPG is not warranted.  As for the individual defendants, POGA has failed to identify any facts it seeks to discover that would enable it to establish either general or specific jurisdiction.  The declarations submitted by the individual defendants setting forth their limited contacts with California are not controverted by POGA.  Thus, POGA has not demonstrated that jurisdictional discovery is appropriate to establish general jurisdiction.  See Pebble Beach, 453 F.3d at 1160.  Nor has POGA made any showing as to how further discovery would enable it to establish specific

1    jurisdiction over the individual defendants based on the primary participant theory.

2    Accordingly, POGA's request to conduct jurisdictional discovery is DENIED without

3    prejudice to the filing of a renewed request for such discovery.  See Boschetto, 539 F.3d at

4    1020 (district court did not abuse its discretion by denying request for jurisdictional

5    discovery where the request for discovery was based on little more than a hunch that it

6    might yield jurisdictionally relevant facts).

7              2.       Leave to Amend

8          POGA requests leave to amend the complaint if the Court determines that further

9    allegations are necessary to establish personal jurisdiction over any of the Defendants.  Pl.'s

10   Opp. at 12.  If a district court grants a motion to dismiss for lack of personal jurisdiction, it

11   must then decide whether to grant leave to amend.  A district court should grant leave to

12   amend unless it determines that the pleading could not possibly be cured by the allegation

13   of other facts.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); see Jackson v. Carey,

14   353 F.3d 750, 758 (9th Cir. 2003) ("dismissal without leave to amend is improper unless it

15   is clear that the complaint could not be saved by any amendment").  Here, because it is not

16   clear that the complaint cannot be amended to add facts establishing personal jurisdiction

17   over the individual defendants, POGA's request for leave to amend is GRANTED.

18   **IV.    CONCLUSION**

19         For the reasons stated above, IT IS HEREBY ORDERED THAT:

20         1.       Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED

21   IN PART AND DENIED IN PART.  The motion is granted as to the individual defendants

22   with leave to amend and denied as to RPG.  POGA may file a first amended complaint by

23   no later than thirty (30) days from the date this Order is filed.  The Court warns POGA that

24   the failure to timely file a first amended complaint will result in the dismissal of the

25   individual defendants from this action with prejudice.

26         2.       POGA's request for jurisdictional discovery is DENIED without prejudice to

27   the filing of a renewed request for such discovery.  Any renewed request for jurisdictional

28   discovery must articulate the specific discovery POGA seeks to conduct and how such

1  discovery will enable it to make a prima facie showing of jurisdictional facts with respect to

2  the individual defendants.

3         3.      This Order terminates Docket 10.

4         IT IS SO ORDERED.

5  Dated:  9/30/2013                            _____
                                               SAUNDRA BROWN ARMSTRONG
6                                              United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28