UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| POGA MGMT PTNRS LLC,<br><br>    Plaintiff,<br><br>  vs.<br><br>MEDFILER LLC d/b/a RPG CONSULTANTS, ALVIN RAPP, EVAN RAPP and DOES 1-20,<br><br>    Defendants. | Case No: C 12-06087 SBA<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Docket 41 |

Plaintiff POGA MGMT PARTNERS, LLC ("POGA") brings the instant action against Defendants Medfiler, LLC d/b/a RPG Consultants ("RPG"), Alvin Rapp ("Alvin"), and Evan Rapp ("Evan") (collectively, "Defendants"), alleging claims for breach of fiduciary duty and conspiracy to commit breach of fiduciary duty. The parties are presently before the Court on Defendants' motion to dismiss the first amended complaint ("FAC") under Rule 12 of the Federal Rules of Civil Procedure. Dkt. 41. POGA opposes the motion. Dkt. 44. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Defendants' motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.  **BACKGROUND**

POGA is a limited liability company organized and existing under the laws of California with its principal place of business in California. FAC ¶ 2, Dkt. 37. Michael Gamboa ("Gamboa") is POGA's "Managing Member" and is a resident of California. Id. RPG is a limited liability company organized and existing under the laws of New York. Id.

¶ 3. At all relevant times, Evan was the "100% owner and member of RPG," while Alvin was a "member" of RPG. Id. ¶¶ 4-5.[1] Alvin and Evan (collectively, the "individual defendants") currently live in New York and have never lived in California. See Alvin Decl. ¶ 2, Dkt. 10-1; Evan Decl. ¶ 2, Dkt. 10-6.

On or about March 2004, POGA and Gamboa entered into a partnership with Defendants to create a revolutionary new company called 401k Retirement Solutions, LLC ("401k Retirement Solutions").[2] FAC ¶ 12. The partnership created an ongoing, continuing obligation between POGA and Defendants. Id. "Pursuant to the partnership, Defendants were obligated to make quarterly distributions of income to [POGA]." Id.

The goal of 401k Retirement Solutions was to create an "open architecture platform service that offered bundled services to clients to service their 401k accounts." FAC ¶ 15. "Using Exchange Traded Funds ('ETFS'), 401k [Retirement Solutions] offered investment education, participant and plan record keeping, internet access for participants, as well as sponsor discrimination testing, annual government reporting on 5500 forms, coupled with a hands-on tailored plan design." Id.

During the course and scope of forming the partnership, POGA was located in California and Defendants were located in New York. FAC ¶ 17. "They communicated heavily through telephone and electronic mail. Over the course of their entire business relationship, [the parties'] communications were mostly via email and telephone." Id.

Defendants' role in the partnership was to provide recordkeeping services for 401k Retirement Solutions' clients (including clients in California), and to distribute a portion of the fees generated by the company to POGA. FAC ¶ 19. The individual defendants were in control of 401k Retirement Solutions' financial accounts and were responsible for

---

[1] Although Alvin "holds himself out as a 'founding partner' of RPG[,] . . . he does not technically have any ownership of RPG." FAC ¶ 5. Alvin is the father of Evan; he "functions as the managing partner and/or chief executive of RPG." Id.

[2] While Alvin was the primary negotiator for RPG throughout the formation of 401k Retirement Solutions, Evan is the 100% owner of RPG. FAC ¶ 13. During the parties' negotiations, Alvin assured POGA that he was in control of RPG and that Evan only had ownership of RPG for estate-planning purposes. Id.

directing and controlling the quarterly distributions to POGA.  Id. ¶¶ 19, 21.  Through Alvin, Defendants attempted to generate more business for 401k Retirement Solutions by recruiting new clients to its platform.  Id. ¶ 20.

      401k Retirement Solutions charged clients a quarterly fee between 1.75% and 2.75%, with a minimum of 3.5% for plans with assets of less than $125,000.  FAC ¶ 18.  It also charged a fee per participant in each plan and a quarterly fee for recordkeeping services.  Id.  POGA and the individual defendants split the fees generated by 401k Retirement Solutions "50/50."  Id.

      By 2007, gross revenue for 401k Retirement Solutions was about $166,000 quarterly with $60,000,000 in gross plan assets.  FAC ¶ 22.  Annual projected revenue for 401k Retirement Solutions for the end of 2010 was between $1,000,000 and $1,500,000, with assets in excess of $100,000,000.  Id.

      At some point during their business relationship with POGA, Defendants became "greedy" and "frustrated" that their profit split in 401k Retirement Solutions was only 50%" and they began "siphon[ing] off" clients to a competing platform that they created using 401k Retirement Solutions funds, employees, and software.  FAC ¶¶ 23-24.  POGA asserts that the creation of this competing platform was Defendants' "first step in destroying 401k [Retirement Solutions] and destroying [POGA]."  Id. ¶ 24.

      POGA alleges that the individual defendants were the "primary participants and central figures in creating the competing platform."  FAC ¶ 25.  They directed and authorized the use of 401k Retirement Solutions' funds to create the new, competing platform.  Id.  They also directed 401k Retirement Solutions' employees to administer that new platform "without the knowledge or consent of POGA."  Id.

      POGA further alleges that the individual defendants directed RPG in creating an identical software platform to administer 401k Retirement Solutions' clients through RPG, without POGA's knowledge or consent.  FAC ¶ 26.  According to POGA, the individual defendants were the "primary participants and central figures in creating the new software

platform. They negotiated contracts with the software creator, and intentionally withheld all of this information from POGA." Id.

Following their creation of the new software platform, Defendants began "migrating" a portion of 401k Retirement Solutions' clients to the platform without the knowledge or consent of POGA. FAC ¶ 27. According to POGA, the individual defendants were "the primary participants and central figures in this client migration. They used their control of 401k [Retirement Solutions] software platform to complete the data migration to their own competing platform. . . ." Id. POGA alleges that, even though Defendants had migrated a portion of 401k Retirement Solutions' clients to their own competing platform, they continued to acknowledge their partnership role in the company, continued to service and administer the remaining clients, and continued to make quarterly distributions to POGA. Id. ¶ 28.

When POGA learned of Defendants' "breach of fiduciary duty" (e.g., Defendants' migration of clients to the new competing platform), the individual defendants induced POGA to refrain from taking legal action by making repeated promises that they would resolve the dispute with a fair and equitable settlement that would allow the parties to continue to have a business relationship. FAC ¶¶ 29-30. According to POGA, Defendants' promises, made primarily by Alvin, began in mid-2007 and continued through 2009. Id. ¶ 30. In reliance on those promises, POGA alleges that it remained partners with Defendants and refrained from taking legal action throughout 2008 and 2009. Id. ¶ 31. During this time period, the individual defendants continued to control 401k Retirement Solutions' accounts and continued to make quarterly distributions to POGA. Id. ¶ 32.

In the fourth quarter of 2009, Alvin sent a letter to 401k Retirement Solutions' clients advising them that RPG was withdrawing its recordkeeping services from 401k Retirement Solutions "in a matter of days." FAC ¶ 35. In that letter, Defendants allegedly offered 401k Retirement Solutions' clients an opportunity to move their 401(k) plans to Defendants' new platform. Id. According to POGA, the majority of 401k Retirement Solutions' clients "moved" to Defendants' new platform because they faced "imminent

termination" of Defendants' recordkeeping services.  Id.  POGA asserts that the individual defendants were "the primary participants who authorized and directed RPG to withdraw its record keeping services."  Id. ¶ 34.

POGA maintains that Defendants "destroyed" 401k Retirement Solutions' ability to conduct business by seizing control of the company and its assets, including its clients.  FAC ¶ 36.  POGA asserts that the Defendants have failed and refused to account for their actions and continue to insist they are partners in 40lk Retirement Solutions, even though they have engaged in self-dealing, formed a competing business, and taken the assets of 40lk Retirement Solutions.  Id. ¶ 37.

As of the first quarter of 2010, 401k Retirement Solutions had no assets or revenue as a result of Defendants' conduct.  FAC ¶ 39.  According to POGA, the Defendants have failed to make quarterly distributions to it despite their ongoing obligation to do so.  Id.  POGA asserts that the individual defendants are "the primary participants who willfully refuse to make quarterly distributions to [it]."  Id.

## II. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The Court previously granted in part and denied in part Defendants' motion to dismiss the complaint for lack of personal jurisdiction.  The motion was denied as to RPG and granted as to the individual defendants with leave to amend.  Defendants now move to dismiss the individual defendants on the ground that POGA has failed to cure the pleading deficiencies previously identified by the Court.  Defendants contend that the FAC's conclusory allegations are insufficient to establish personal jurisdiction over the individual defendants.  Specifically, Defendants argue that dismissal is appropriate because the FAC does not allege facts demonstrating that the individual defendants were the primary participants or central figures in the alleged wrongdoing.

#### 1. Legal Standard

District courts have the authority to dismiss an action for lack of personal jurisdiction.  Fed.R.Civ.P. 12(b)(2).  "Where a defendant moves to dismiss a complaint for

lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). To make that showing, a plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant. Mattel, Inc. v. Greiner and Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003).

In deciding a motion to dismiss for lack of personal jurisdiction, the Court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002). However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Alexander v. Circus Circus Enters., Inc., 972 F.2d 261, 262 (9th Cir. 1992) (internal quotation marks omitted). In addition, the court need not accept as true mere conclusory allegations in the complaint. See NuCal Foods, Inc. v. Quality Egg LLC, 887 F.Supp.2d 977, 988 (E.D. Cal. 2012) (citing Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995); China Technology Global Corp. v. Fuller, Tubb, Pomeroy & Stokes, 2005 WL 1513153, at *3 (N.D. Cal. 2005)).

Personal jurisdiction over a nonresident defendant is analyzed under a two-part test. Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994). First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Id. Second, the exercise of jurisdiction must comport with federal due process. Id. at 1404-1405. Because California's long-arm statute, Cal. Civ. Proc. Code § 410.10, extends jurisdiction to the limit of federal due process, the Court need only analyze the second part of the test. See Glencore, 284 F.3d at 1123.

Due process requires that a defendant have sufficient "minimum contacts" with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The minimum contacts must be such that a defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Under a minimum contacts analysis, jurisdiction may either be "general" or "specific." Doe, 248 F.3d at 923. General jurisdiction depends on the defendant's "substantial, continuous and systematic" contacts with the forum, "even if the suit concerns matters not arising out of his contacts with the forum." Glencore, 284 F.3d at 1123. Specific jurisdiction exists "where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." Id.

Here, POGA does not argue that the individual defendants have sufficient contacts with California to satisfy the standard for exercising general jurisdiction over a non-resident defendant. Accordingly, the Court need only determine whether POGA has pled sufficient facts to establish specific jurisdiction over the individual defendants.

### 2.     Specific Jurisdiction

POGA contends that the individual defendants are subject to personal jurisdiction in this forum because "the FAC alleges five areas of continuous wrongdoing perpetrated by the individual defendants." According to POGA, the individual defendants either directly participated in, or authorized and controlled, the following conduct: (1) failure to distribute a portion of the fees generated by 401k Retirement Solutions to POGA; (2) the creation of a new business platform that competes with 401k Retirement Solutions; (3) the creation of a software platform that is identical to the software platform used by 401k Retirement Solutions; (4) the "migration" of 401k Retirement Solutions' clients to the new competing platform; and (5) the withdrawal of recordkeeping services to 401k Retirement Solutions.

The existence of specific jurisdiction is directly dependent on whether the claims at issue arise from the defendants' forum-related contacts. Rano v. Sipa Press, Inc., 987 F.2d

580, 587 (9th Cir. 1993). The Ninth Circuit applies a three-prong test for analyzing the presence of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (citing Burger King, 471 U.S. at 476-478). Of the three prongs, the first "is the most critical." Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997).

Here, while the Court previously determined that it has personal jurisdiction over RPG,[3] "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." Colt Studio, Inc. v. Badpuppy Enter., 75 F.Supp.2d 1104, 1111 (C.D. Cal. 1999). The fiduciary shield doctrine provides that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over that person. Rather, there must be a reason for the court to disregard the corporate form." Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989) (citations omitted). While employees are not necessarily subject to liability in a given jurisdiction due to the contacts of their employers, "their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984).

---

[3] See Poga Mgmt. Partners, LLC v. Medfiler, 2013 WL 5487343, at *5-8 (N.D. Cal. 2013).

- 8 -

"Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those used in liability contexts." Davis, 885 F.2d at 520. The corporate form may be ignored where the corporation is the alter ego of the individual defendant. Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir. 1984). "To apply the alter ego doctrine, the court must determine (1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice."[4] Id.

The corporate form may also be ignored where a corporate officer or director authorizes, directs, or participates in tortious conduct. See Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985); Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort"). "[C]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity." See Davis, 885 F.2d at 524 n. 10; see Calder, 465 U.S. at 790 (an employee, officer or director may be subject to personal jurisdiction where the individual is a "primary participant" in the alleged wrongdoing). The assertion of personal jurisdiction based on the primary participant theory is appropriate where the individual had "control of, and direct participation in the alleged activities." Wolf Designs, Inc. v. DHR Co., 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004) (citing Transgo, 768 F.2d at 1021). Absent such participation and control, a defendant's contacts with the forum state will not suffice to establish personal jurisdiction where such contacts arise only by virtue of the individual's status as an employee of a company. See Colt Studio, 75 F.Supp.2d at 1112.

---

[4] POGA does not argue that the alter ego doctrine applies.

- 9 -

With regard to personal jurisdiction over the individual defendants, the FAC alleges in relevant part, as follows. Evan is "the 100% owner and member of RPG," while Alvin holds himself out to be the "founding partner" of RPG and "functions as the managing partner and/or chief executive of RPG. FAC ¶¶ 4-5. In 2004, POGA and its managing partner, Gamboa, entered into a partnership with Defendants to create 401k Retirement Solutions. Id. ¶ 12. Defendants' role in the partnership was to provide recordkeeping services for 401k Retirement Solutions' clients (including clients in California), and to distribute a portion of the fees generated by 401k Retirement Solutions to POGA, a limited liability company organized and existing under the laws of California. Id. ¶¶ 2, 19. The individual defendants controlled 401k Retirement Solutions' financial accounts and were directly responsible for making quarterly distributions to POGA. Id. ¶ 21. After becoming frustrated with their 50% profit split with POGA, Defendants agreed to create, and created, a competing business platform using 401k Retirement Solutions' funds, employees, and software. Id. ¶¶ 23-24.

According to POGA, the individual defendants engaged in the following conduct: they were the primary participants and central figures in creating the competing business platform; they directed and authorized the use of 401k Retirement Solutions' funds for creating the competing platform; they directed 401k Retirement Solutions employees to administer the competing platform; they directed RPG to create an identical software platform to administer 401k Retirement Solutions' clients through RPG; and they negotiated contracts with the software creator. FAC ¶¶ 25-26. POGA asserts that the individual defendants "migrated" a portion of 401k Retirement Solutions' clients to the competing platform. Id. ¶ 27. According to POGA, the individual defendants used their control of 401k Retirement Solutions' software platform to complete the migration. Id. POGA further asserts that the individual defendants were the primary participants who authorized and directed RPG to withdraw its recordkeeping services from 401k Retirement Solutions, which resulted in "the majority" of 401k Retirement Solutions' clients moving to Defendants' competing platform. Id. ¶¶ 34-35.

The Court finds that POGA has alleged sufficient facts to establish personal jurisdiction over the individual defendants. POGA has alleged facts showing that the individual defendants were the primary participants and central figures in the alleged wrongdoing. The allegations in the FAC, if proven, establish that the individual defendants had control of, and directly participated in the activities giving rise to this suit. Because the Court previously determined that the tortious conduct alleged in this action was purposefully directed at California, and that POGA's claims arise out of forum-related conduct,[5] the first two prongs of the test for specific jurisdiction have been met. The remaining question is whether the exercise of personal jurisdiction over the individual defendants is reasonable. The individual defendants bear the burden to "present a compelling case" that the exercise of jurisdiction would be unreasonable. Schwarzenegger, 374 F.3d at 802. They have failed to do so. Indeed, the individual defendants have not offered any argument in this regard. Accordingly, Defendants' motion to dismiss the individual defendants for lack of personal jurisdiction is DENIED. In light of this ruling, POGA's request for leave to conduct jurisdictional discovery is DENIED as MOOT.

**B.     Motion to Dismiss for Failure State a Claim**

Defendants move to dismiss the FAC on the ground that POGA's claims are time-barred. "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010). " '[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" Id. In assessing the sufficiency of the allegations in the FAC, the court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). However, "the tenet that a court must

---

[5] See Poga, 2013 WL 5487343, at *5-7.

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 679. Those facts must be sufficient to push the claims "across the line from conceivable to plausible." Id. at 683. Ultimately, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted).

### 1. Applicable Limitations Period

As a preliminary matter, Defendants contend that the three-year statute of limitations governing fraud claims applies to POGA's claims because the gravamen of the FAC is that Defendants' acts constituted fraud. POGA disagrees, arguing, without elaboration, that "[t]he tortious acts alleged [in the FAC] are clearly breaches of the fiduciary duty of loyalty."

A federal court exercising diversity jurisdiction "applies the substantive law of the state, including the state's statute of limitations." Albano v. Shea Homes Ltd. P'ship, 634 F.3d 524, 530 (9th Cir. 2011). In California, a claim for breach of fiduciary duty must be brought within four years of accrual. Thomson v. Canyon, 198 Cal.App.4th 594, 606 (2011). A fraud claim must be brought within three years of accrual. Cal. Civ. Proc. Code § 338(d). "Whether or not a cause of action for conspiracy is timely must be determined by reference to the statute of limitations applicable to the underlying cause of action." Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc., 208 Cal.App.3d 1297, 1309 (1989).

"To determine the statute of limitations which applies to a cause of action[,] it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action." Hensler v. City of Glendale, 8 Cal.4th 1, 22 (1994); see City of Vista v. Robert Thomas Securities, Inc., 84 Cal.App.4th 882, 889 (2000) ("The statute of limitations that applies to an action is governed by the gravamen of the complaint, not the cause of action

pled."). Where the gravamen of the complaint is that the defendant's acts constituted actual or constructive fraud, the applicable statute of limitations is the limitations period governing fraud, even though the cause of action is designated by the plaintiff as a claim for breach of fiduciary duty. Thomson, 198 Cal.App.4th at 607; see American Master Lease LLC v. Idanta Partners, Ltd., 225 Cal.App.4th 1451, 1479 (2014) (the limitations period for breach of fiduciary duty is four years, unless the gravamen of the claim is actual or constructive fraud, in which case the limitations period is four years); Fuller v. First Franklin Financial Corp., 216 Cal.App.4th 955, 963 (2013) (the "limitations period is three years . . . for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit, rather than the catchall four-year limitations period that would otherwise apply").

The common law elements of fraud which give rise to a claim for deceit under California law are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal.App.4th 445, 481 (1998). Constructive fraud is a unique species of fraud that applies solely to a fiduciary or confidential relationship. Assilzadeh v. California Federal Bank, 82 Cal.App.4th 399, 415 (2000). Constructive fraud consists of "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him." Cal. Civ. Code § 1573. "To state a claim for constructive fraud under California law, Plaintiffs must "allege (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F.Supp.2d 1009, 1021 (N.D. Cal. 2007).

Here, the allegations in the FAC sound in fraud. POGA alleges that a fiduciary relationship existed between the parties by virtue of their partnership in 401k Retirement

Solutions,[6] and that Defendants breached their fiduciary duty of loyalty to POGA by: (1) working together to create a competing business platform using 401k Retirement Solutions' funds, employees and software; (2) stealing 401k Retirement Solutions' clients; (3) withdrawing their recordkeeping services; and (4) failing to distribute quarterly earnings to POGA beginning in 2010.[7]  POGA further alleges that it did not know or consent to Defendants' breaches and that it has been harmed by Defendants' conduct in the form of lost income.

Having reviewed the allegations in the FAC, the Court finds that the gravamen of the instant action is that Defendants' acts constituted fraud.  The FAC alleges that Defendants engaged in deceitful acts for the purpose of stealing 401k Retirement Solutions' clients for their competing business platform in violation of their duty of loyalty, which has caused POGA to suffer monetary damages.  Accordingly, because POGA's breach of fiduciary claim is predicated on fraud, the claims alleged in the FAC are governed by a three-year limitations period.

### 2. Equitable Estoppel

POGA contends that Defendants are equitably estopped from asserting a statute of limitations defense because they induced POGA not to sue within the statutory period. Equitable estoppel comes into play only after the limitations period has run and addresses the circumstances in which a party will be estopped from asserting the statute of limitations

---

[6] California law provides that partners owe fiduciary duties to the partnership and to other partners.  See Cal. Corp. Code. § 16404(a); see Jones v. Wells Fargo Bank, 112 Cal.App.4th 1527, 1540 (2003) ("Partnership is a fiduciary relationship, and partners may not take advantages for themselves at the expense of the partnership.").

[7] Among the duties owed by partners in a partnership is the duty of loyalty, which includes, the duty to:  (1) "account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct . . . of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity"; (2) "refrain from dealing with the partnership in the conduct . . . of the partnership business as or on behalf of a party having an interest adverse to the partnership"; and (3) "refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership."  Cal. Corp. Code. § 16404(b).  "A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his copartner for his share of the prospective business opportunity."  Leff v. Gunter, 33 Cal.3d 508, 515 (1983).

as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.  Lantzy v. Centex Homes, 31 Cal.4th 363, 383 (2003).  Equitable estoppel is wholly independent of the limitations period itself and takes its life from the equitable principle that no man may profit from his own wrongdoing in a court of justice.  Id.

> Under California law, the elements of equitable estoppel are as follows:
>
> (1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury.

Honig v. San Francisco Planning Dep't, 127 Cal.App.4th 520, 529 (2005).  "A valid claim for equitable estoppel requires:  (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it."  Simmons v. Ghaderi, 44 Cal.4th 570, 584 (2008).

Here, POGA alleges that Defendants breached their fiduciary duty to POGA in 2007 by "migrating" a portion of 401k Retirement Solutions' clients to their new competing business platform.  FAC ¶¶ 22-27.  POGA further alleges that the individual defendants induced it to refrain from taking legal action by making repeated promises that they would resolve the parties' dispute with a fair and equitable settlement if POGA did not take legal action.  Id. ¶¶ 29, 47.  According to POGA, the individual defendants' promises were "continuing and ongoing in nature, beginning in mid-2007 and continuing through 2009."  Id. ¶ 30.  In reliance on these promises, POGA maintains that it remained partners with Defendants, agreed to refrain from taking legal action, and had "discussions" with Defendants throughout 2008 and 2009 regarding the parties' dispute.  Id. ¶¶ 31-32.

Here, even viewing the allegations in the FAC in the light most favorable to POGA, the Court finds that POGA has failed to allege sufficient facts to invoke the doctrine of

equitable estoppel. While promises of settlement without the need of resorting to suit have been held to constitute conduct that estops a party from asserting the statute of limitations as a defense,[8] where, as here, "there is still ample time to institute the action within the statutory period after the circumstances inducing delay have ceased to operate, the plaintiff who failed to do so cannot claim an estoppel." Lobrovich v. Georgison, 144 Cal.App.2d 567, 573-574 (1956); see also Santee v. Santa Clara County Office of Education, 220 Cal.App.3d 702, 716 (1990) (reliance on equitable estoppel precluded where "appellants still had two months . . . before" time "limit expired"); Mills v. Forestex Co., 108 Cal.App.4th 625, 655-656 (2003) (plaintiffs had ample time to sue when a year or more remained after they stopped relying on defendant's promises). In the FAC, POGA concedes that it was on notice of Defendants' breach of fiduciary duty by "mid-2007." Thus, even assuming that the individual defendants' repeated promises of settlement induced POGA to delay in filing suit until the end of 2009 as POGA claims, POGA still had ample time to file suit within the statutory period after the circumstances inducing delay ceased to operate. Under the three-year statutory period for breach of fiduciary claims predicated on fraud, POGA had approximately six months to file suit (i.e., until mid-2010). POGA, however, did not commence the instant action until over two years later on September 28, 2012. Accordingly, POGA cannot rely on the doctrine of equitable estoppel to justify its delay in filing this action.

### 3. Continuing Violations Doctrine

POGA contends that the continuing violations doctrine applies because the breaches of fiduciary duty that occurred outside the limitations period (e.g., migrating clients to the competing business platform in 2007) are sufficiently linked to unlawful conduct within the limitations period (e.g., withdrawing recordingkeeping services in late 2009).

"The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of

---

[8] See Flintkote Co. v. Presley of Northern California, 154 Cal.App.3d 458, 465 (1984).

them upon commission or sufferance of the last of them." Aryeh v. Canon Business Solutions, Inc., 55 Cal.4th 1185, 1192 (2013). The doctrine permits recovery for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period. Komarova v. National Credit Acceptance, Inc., 175 Cal.App.4th 324, 343 (2009). The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely if the action is filed within one year of the most recent violation, and the entire course of conduct is at issue. Id.

Here, even assuming that the continuing violations doctrine applies to the wrongs alleged in the FAC (i.e., the actions that took place outside the limitations period are sufficiently linked to unlawful conduct within the limitations period), POGA failed to bring suit within one year of the most recent wrongful completed act - Defendants' withdrawal of recordkeeping services in the fourth quarter of 2009.[9] Accordingly, the continuing violations doctrine does not apply. To the extent POGA contends that its breach of fiduciary duty claim is timely because Defendants have failed to make distribution payments "through the present," the Court rejects this argument. Continuing injury from a completed act (i.e., Defendants' withdrawal of recordkeeping services) does not extend the limitations period. See Vaca v. Wachovia Mortgage Corp., 198 Cal.App.4th 737, 744-745 (2011).

### 4. Continuous Accrual Theory

Finally, POGA contends that regardless of whether equitable estoppel or the continuing violations doctrine applies, the wrongdoing committed in late 2009 and continuing to the present is within the statute of limitations governing its breach of fiduciary duty claim. The Court construes this argument as invoking the continuous accrual theory.

---

[9] When Defendants withdrew from the partnership by withdrawing its recordkeeping services from 401k Retirement Solutions, the partnership dissolved as a matter of law. Corrales v. Corrales, 198 Cal.App.4th 221, 227 (2011) (by definition, a partnership must consist of at least two persons).

- 17 -

1  The continuous accrual theory is "a response to the inequities that would arise if the
2 expiration of the limitations period following a first breach of duty or instance of
3 misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct;
4 parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity
5 from suit even for recent and ongoing misfeasance.  In addition, where misfeasance is
6 ongoing, a defendant's claim to repose, the principal justification underlying the limitations
7 defense, is vitiated." Aryeh, 55 Cal.4th at 1198.  "To address these concerns, [it has been]
8 long settled that separate, recurring invasions of the same right can each trigger their own
9 statute of limitations." Id.

10  "Generally speaking, continuous accrual applies whenever there is a continuing or
11 recurring obligation:  'When an obligation or liability arises on a recurring basis, a cause of
12 action accrues each time a wrongful act occurs, triggering a new limitations period.'
13 Because each new breach of such an obligation provides all the elements of a claim -
14 wrongdoing, harm, and causation - each may be treated as an independently actionable
15 wrong with its own time limit for recovery." Aryeh, 55 Cal.4th at 1199 (citations omitted).
16 Where continuous accrual applies, however, the plaintiff may only recover "damages
17 arising from those breaches falling within the limitations period. . . .  '[T]he continuing
18 accrual rule effectively limits the amount of retroactive relief a plaintiff or petitioner can
19 obtain to the benefits or obligations which came due within the limitations period.' " Id.
20 (citations and footnote omitted).

21  The Court finds that the continuous accrual theory applies.  POGA has alleged a
22 wrongful course of conduct consisting of individual acts, each of which was independently
23 actionable, at least one of which allegedly occurred within three years of the filing of the
24 complaint.  Specifically, POGA alleges that Defendants breached their fiduciary duty of
25 loyalty when they created a competing business platform and began "migrating" a portion
26 of 401k Retirement Solutions' clients to the platform in 2007 without the knowledge or
27 consent of POGA.  See FAC ¶¶ 24-30.  POGA further alleges that, "[i]n continuation of
28 their breach of fiduciary duties to [POGA]," Defendants withdrew their recordkeeping

services to 401k Retirement Solutions "in the fourth quarter of 2009," i.e., sometime within the time period from October 2009 to December 2009.  Id. ¶ 34.  POGA commenced the instant action on September 28, 2012.

Accepting the allegations in the FAC as true and construing them in the light most favorable to POGA, Defendants' withdrawal of recordkeeping services occurred within the three-year statute of limitations.  Therefore, dismissal of POGA's breach of fiduciary duty claim is inappropriate.  Accordingly, Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is DENIED.

## III.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.  POGA's request for jurisdictional discovery is DENIED as MOOT.

2. Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is DENIED.

3. This Order terminates Docket 41.

IT IS SO ORDERED.

Dated: 8/12/2014

SAUNDRA BROWN ARMSTRONG
United States District Judge